CITY OF CINCINNATI ex rel. SMITHERMAN, Appellee,

v.

CITY OF CINCINNATI, Appellant.

[Cite as *Cincinnati ex rel. Smitherman v. Cincinnati,*
188 Ohio App.3d 171, 2010-Ohio-2768.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–090502.

Decided June 18, 2010.

Finney, Stagnaro, Saba & Patterson Co., L.P.A., and Christopher P. Finney; and The Law Firm of Curt C. Hartman and Curt C. Hartman, for appellee.

John P. Curp, Cincinnati City Solicitor, and Terrance A. Nestor, Assistant City Solicitor, for appellant.

---

Per Curiam.

{¶ 1} Relator-appellee, Christopher Smitherman, instituted this taxpayer action seeking to restrain the abuse of corporate powers by the city of Cincinnati, acting

through its city council, in applying newly enacted Ordinance 419–2008 to require the consent of the council for any appointment by the city manager to the board of the local metropolitan housing authority. In addition, Smitherman sought a declaratory judgment that the city manager has the full right and authority under R.C. 3735.27(B)(1)(b) to appoint members to the board, and that the city council has no authority to review, approve, or otherwise limit any such appointment.

{¶ 2} Respondent-appellant, the city of Cincinnati, now appeals the trial court's judgment granting declaratory and injunctive relief, as well as attorney fees, to Smitherman.

## The Background

{¶ 3} The Cincinnati Metropolitan Housing Authority ("CMHA") is governed by a five-member board of commissioners. Pursuant to R.C. 3735.27(B)(1)(b), one member is appointed by the probate court, one member is appointed by the court of common pleas, one member is appointed by the board of county commissioners, and two of the board's members are appointed by the chief executive officer of the most populous city in the district. With respect to the CMHA, the city of Cincinnati is the most populous city in the district, and its chief executive officer is the city manager. Thus, two of the CMHA board members are appointed by the city manager, each for a five-year term.

{¶ 4} On December 7, 2008, the five-year term of Don Driehaus, one of the two CMHA board members appointed by Cincinnati's city manager, expired, thereby making that seat available for an appointment.

{¶ 5} On December 10, 2008, at a meeting of Cincinnati's city council, seven council members presented a motion seeking the city manager's reappointment of Driehaus to another five-year term as a CMHA board member. But the city's mayor ruled the motion out of order, so no vote was taken on it.

{¶ 6} A second motion seeking the city manager's reappointment of Driehaus was presented and approved by the council. In addition, the council considered and passed Ordinance No. 419–2008, which required the council's confirmation of any person appointed by the city manager to boards or commissions not within the city's executive operations. In the ordinance itself, the council recognized that "there is currently no procedure in place which allows [c]ouncil to confirm appointments made by the [c]ity [m]anager pursuant to state or local law."

{¶ 7} The ordinance stated the following: "Section 1. That council hereby requires that as permitted by law, with regard to any individuals who are being considered for appointment by the City Manager to any boards or commissions independent of the administrative or executive operations of the City of Cincinnati, the City Manager shall initially submit the names of such individuals to City

Council at least seven days prior to appointment to allow for Council confirmation of such individuals, but providing that such confirmation procedure would not be applicable to any appointments related to the executive and administrative authority of the City Manager to direct the operations of the City under his or her authority under the Charter of the City of Cincinnati.

{¶ 8} "Section 2. That this ordinance shall be an emergency measure necessary for the preservation of the public peace, health, safety and general welfare and shall * * * be effective immediately. The reason for the emergency is the immediate need to ensure that a procedure allowing for Council confirmation of applicable appointments to be made by the City Manager be implemented at the earliest possible time."

{¶ 9} The city manager, since his hiring in August 2006, had not appointed anyone to any board or commission independent of the internal administrative or executive functions of the city. Moreover, the city stipulated that the city manager was not aware of any such boards to which he would make appointments in his capacity as the city manager.

{¶ 10} In a memorandum dated December 11, 2008, the city solicitor advised Cincinnati's mayor that the city council "may not enact legislation that contradicts a mandatory state law regarding an appointment procedure for a state-created entity" like CMHA. The solicitor warned that the city's attempt to deviate from the state-mandated method of appointment to the CMHA would expose the city to litigation regarding the legality of the appointment.

{¶ 11} On December 12, 2008, the city manager appointed Lacretia Carter to the board of the CMHA. The position to which Carter was appointed was not the seat left vacant by Driehaus.

{¶ 12} On January 15, 2009, Richard Rust, the interim executive director of the CMHA, advised the city that the board refused to seat Carter as a board member "until either (1) the court resolves the controversy surrounding the city ordinance in the Smitherman suit, or (2) City Council approves her appointment." Rust notified Carter that until the lawsuit was resolved, "it is presumed that the [c]ouncil's ordinance is lawful and that CMHA must abide by what appears to be their decision to be the official appointing body."

{¶ 13} At some point, when it was determined that Carter had been appointed three days before the effective date of Ordinance 419–2008, the CMHA withdrew its earlier refusal to seat Carter on the board.

{¶ 14} On December 15, 2008, relator-appellee, Christopher Smitherman, tendered a written request to the city solicitor to apply, in the name of the city, for an injunction under R.C. 733.56 to restrain the city council from illegally requiring the city manager to submit names of prospective CMHA board

appointees to the council for review and confirmation. Despite his earlier opinion that the council's attempt to usurp the city manager's appointment authority was improper and would expose the city to litigation, the city solicitor rejected Smitherman's request. So Smitherman instituted a taxpayer suit in his own name.

{¶ 15} In its motion to dismiss the action, the city indicated to the court that it was "willing to participate in a proper declaratory judgment with all necessary parties." The trial court denied the motion.

{¶ 16} The trial court granted summary judgment in favor of Smitherman. In addition, the court entered a permanent injunction enjoining the city from undertaking any efforts to apply or otherwise enforce Ordinance 419–2008 as it relates to appointments by the city manager to the board of the CMHA. The court awarded attorney fees to Smitherman. This appeal followed.

{¶ 17} In four assignments of error, the city argues that the trial court erred by (1) granting attorney fees, (2) denying the city's motion to dismiss, (3) granting summary judgment in favor of Smitherman, and (4) issuing an injunction. We address the assignments of error out of order.

{¶ 18} In its second assignment of error, the city argues that the trial court erred by failing to dismiss Smitherman's action. The city argues that Smitherman had no personal stake in the case's outcome and, therefore, had no standing to obtain a declaratory judgment. We are not persuaded.

### Standing

{¶ 19} A taxpayer has standing to enforce a public right, regardless of a private or personal benefit.[1] The right to bring a taxpayer action is a right conferred by statute. If the city solicitor fails, upon a written request, to seek to enjoin the misapplication of city funds, the abuse of corporate powers, or the execution or performance of illegal contracts, R.C. 733.59 authorizes a taxpayer to institute suit in his own name on behalf of the city.

{¶ 20} In this case, the city solicitor refused Smitherman's written request to seek to enjoin the city council's attempt to restrict the city manager's power to make appointments to the CMHA board. So Smitherman instituted an action in his name, on behalf of the city. Under R.C. 733.59, Smitherman had standing to enforce a public right to the proper exercise of the city's corporate powers.

### Summary Judgment

{¶ 21} In its third assignment of error, the city argues that the trial court erred by granting summary judgment in favor of Smitherman.

---

1. *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 631 N.E.2d 1048.

{¶ 22} The city did not dispute that the application of Ordinance 419–2008 to the city manager's appointments to the CMHA board would contravene state law. As no genuine issues of material fact remained to be litigated, the trial court properly granted summary judgment in favor of Smitherman. We overrule the third assignment of error.

### *The Injunction*

{¶ 23} In its fourth assignment of error, the city argues that the trial court erred by issuing an unnecessary injunction. We review the issuance of an injunction for an abuse of discretion.[2]

{¶ 24} The city contends that the injunction sought by Smitherman was an extraordinary remedy in equity, available only where there was no adequate remedy at law. But the city is referring to a mandatory injunction, which has been described as "an extraordinary remedy that compels the defendant to restore a party's rights through an affirmative action."[3]

{¶ 25} The city misunderstands the distinction between prohibitory and mandatory injunctions. A prohibitory injunction "preserves the status quo by enjoining a defendant from performing the challenged acts in the future."[4] In this case, Smitherman sought a prohibitory injunction, to restrain and prevent the abuse of corporate powers by the city, acting through its city council, to subject future appointments to the CMHA board to the advice and consent of the city council. Smitherman did not seek an extraordinary remedy. Thus, the city's argument that the injunction was an "extraordinary remedy" is incorrect.

{¶ 26} Next, the city argues that an injunction was not warranted, because a declaratory judgment alone provided an adequate remedy at law. However, a prohibitory injunction and a declaratory judgment are not mutually exclusive remedies. A party may institute an action for a declaratory judgment *and* a prohibitory injunction to challenge legislation.[5]

{¶ 27} We cannot say that the trial court abused its discretion by restraining the city from applying or otherwise enforcing Ordinance 419–2008 with respect to

**2.** *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 133 N.E.2d 595.

**3.** *State ex rel. GMC v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 12.

**4.** Id.

**5.** See, e.g., *State ex rel. Satow v. Gausse–Milliken*, 98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, ¶ 22.

appointments by the city manager to positions on the CMHA board of commissioners. Consequently, we overrule the fourth assignment of error.

### Attorney Fees

■ {¶ 28} In its first assignment of error, the city argues that the trial court erred by awarding attorney fees to Smitherman. Specifically, the city contends that attorney fees were prohibited by R.C. 2721.16 because Smitherman's suit was solely for a declaratory judgment.

{¶ 29} It is true that "R.C. 2721.16 specifically prohibits the award of attorney fees on a claim for declaratory relief unless another source of law explicitly provides for the award."[6] But Smitherman's suit sought more than declaratory relief. Pursuant to R.C. 733.59, he also sought an injunction to restrain the city from applying the provisions of Ordinance No. 419–2008 to any action by the city manager in appointing members to the CMHA board of commissioners.

■■ {¶ 30} R.C. 733.61 explicitly authorizes a court to award attorney fees to the taxpayer in a successful R.C. 733.59 suit. And the decision to award attorney fees rests entirely within the court's discretion.[7] In exercising this discretion, the court should consider whether the case has resulted in a public benefit and whether the taxpayer had a reasonable basis to support his position.[8] The public benefit need not be monetary in character. "That benefit may be of a more intangible character, such as the prevention of illegal government activity."[9]

{¶ 31} The city does not dispute that Smitherman had a reasonable basis to support his position. Moreover, the city now agrees that the provisions of Ordinance No. 419–2008 cannot be enforced with respect to the city manager's appointments to the CMHA. But the city argues that no public benefit resulted from Smitherman's taxpayer suit, because the city had agreed not to enforce the new ordinance.

{¶ 32} In this case, the trial court concluded that Smitherman's successful prosecution of the action had prevented illegal government activity in the form of "the assumption of power by the Cincinnati city council that it was not entitled to assume or exercise."

---

6. *Westfield Cos. v. O.K.L. Can Line,* 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, ¶ 31.

7. *State ex rel. Miles v. McSweeney,* 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, ¶ 28.

8. Id.

9. *Billington v. Cotner* (1974), 37 Ohio St.2d 17, 19, 66 O.O.2d 9, 305 N.E.2d 805.

{¶ 33} The record reveals that (1) the city council intended the ordinance to apply to the CMHA board appointments, and (2) the CMHA had refused to seat an appointee absent a judicial resolution or the approval of the city council. The public benefitted from the court's prevention of illegal action by the city in the appointment process. The suit ensured that the city would refrain from abusing its corporate powers, and that the proper, statutorily mandated procedure would be followed in appointing the CMHA board members. Accordingly, we hold that the trial court did not abuse its discretion in awarding attorney fees to Smitherman.

{¶ 34} We overrule the first assignment of error and affirm the trial court's judgment.

Judgment affirmed.

SUNDERMANN, P.J., and HENDON and DINKELACKER, JJ., concur.